We'll hear argument first this morning in Case 15-1498, Lynch v. Dimaya. Mr. Kneedler. Kneedler, Mr. Chief Justice, and may it please the Court. The Court of Appeals held that the definition of crime of violence in 18 U.S.C. 16b is unconstitutionally vague on its face, relying on this Court's decision in Johnson holding the residual clause in the Armed Career Criminal Act unconstitutionally vague. That was wrong for two reasons. First, the standard of vagueness applicable in an immigration proceeding is not the same as in a criminal proceeding, because the Constitution does not require prior notice that conduct will give rise to removal, and also because the immigration laws have long been administered by the executive and administrative proceedings because under broad delegations of authority because of the close relation of immigration to foreign relations and national security. Second, though, in any event, under the criminal vagueness standard applied in Johnson, 16b is not unconstitutional. As exemplified by this Court's unanimous decision in Laocale, in the more than 30 years that 16b has been on the books. Ginsburg. But, Mr. Kneedler, didn't the government argue when Johnson was before us that if 16b at the residual clause was invalid, then 16b would be vulnerable because it was subject to the same central objection? Was not that the government's argument? Kneedler, Well, the United States was responding to the argument that was made in Johnson, which was broader than the Court's ultimate rationale. The to the extent substantial risk alone was thought to be a problem, the Court made clear in Johnson that cases involving references to substantial risk are not inherently problematic, and, in fact, there are many such ones. The Court focused its analysis on two different aspects, but they have features that 16b does not have and make 16b very distinctive, and, in fact, that's the reason why 16b has not given rise to the interpretive confusion that finally led this Court in Johnson to hold the ACCA provision unconstitutional. Sotomayor, I thought the Johnson two features at issue were the fact that we were asking courts to imagine what the ordinary crime was, and there was no way to even think about what that was. Your adversary points out with burglary, if the ordinary crime is during the day, there is one level of risk. If it's at night, there is a different level of risk. The nature of the entry is at question, whether it's forcible or merely walking through an open door uninvited. It may be easier with burglary for lots of reasons, but there the level of what or what constitutes an ordinary crime was somewhat at the center of Johnson. Why isn't it at the center here? Kneedler, because I, I, I, there are several very important distinctions between this case and Johnson with respect to that. The ACCA residual clause spoke in terms of a serious potential risk that serious injury to another person might, might result. And as the Court pointed out, that created uncertainty about things that could happen even after the offense was committed, and injury to people, bystanders or anyone else, it could be. Section 16b is very different in that respect. It asks whether the offense by its nature presents a substantial risk that physical force will be used against the person or property of another. And that's very different in several respects. It confines the analysis in both a temporal and functional sense to the elements of the offense. You don't look at what conduct might, might have happened afterward. It focuses narrowly on the elements of the offense because the, the question is whether the use of physical force might be used in the course of committing that offense. Kagan. Kagan. May I ask, Mr. Kneedler, because this aspect of your brief was a, a bit confusing to me, just because sometimes you are talking about temporal and sometimes you're talking about functional, and I want to know what you think the real limitation is. So take the example that you use, which is the possession of a shotgun example, right? Right. And you say that that would fall outside of Section 16. And the question is why. Temporally, you know, you're possessing a shotgun when you shoot somebody. You can't do it any other way. So the temporal analysis doesn't work. So what is it about that example that makes it fall outside of Section 16, whereas you argued it would have fallen inside of ACCA? Well, the — well, first of all, in ACCA, that was part of the confusion. That was the confusion in Johnson itself. Yes, exactly. So why are you so sure that there would not be the confusion under Section 16? Well, I think, again, because of Leocal, and the courts after Leocal have had no problem concluding that it was not covered. And the reason is that Leocal — excuse me, 16b requires a risk of the use of physical force, the — an act of violent crime, as the Court described it in Leocal. And the possession of a sawed-off shotgun at any particular moment in time, it doesn't have to culminate in its use at all for — for a case of — Well, that's absolutely true. And that's what gave us trouble in ACCA, because it could culminate in its use, but it didn't have to culminate in its use. But then you take a case like burglary, and you could say the exact same thing about burglary. Somebody could walk in on a burglary, and all of a sudden there would be a use of force. But a burglary could happen in such a way that nobody walked in, and there wouldn't be a use of force. So, again, it just seems as though we're replicating the same kind of confusions, and there's nothing that separates the two. Or at least I'm trying to find out what you think separates them. Yes. I don't think so, because another important aspect or textual point in 16b is whether the offense, by its nature, presents a substantial risk. By its nature means in its natural or ordinary sense. And, for example, in Leocal, said in no — the Court said in no ordinary or natural sense could the — could DUI be regarded as the affirmative use of physical force. It's not a violent crime. You know, I was — I was very struck by that language, too. And I think it's that language, more than some of the other language you point to in its brief, that might suggest that there's some distinction between 16b and the ACCA residual clause. But on the other hand, by its nature, seems to suggest an elements focus, a real elements focus. Look at the elements and ask, given those elements, given the nature of the offense, what's going to happen? But, you know, the elements section of section 16 is section 16a. So it can't be all about elements. So what is that by its nature doing? Well, it's by its nature the offense, which would incorporate its elements. We think elements are central to both a and b. a involves the actual — actual use of force or threatened use of force or attempted use of force. The element is the actual or threatened use of force. Whereas under 16b, the question is whether the elements add up to an offense in which there is a risk of force being used, even if it doesn't have to. And burglary — burglary is a classic example. It is a classic example of that. And I think for the — But why isn't also possession of a shotgun a classic example of that? Well, let me explain, if I may. Burglary is — is descended from the common law, and its rationale is precisely because of the risk that the — that the burglar will encounter someone in the course of committing the burglary. And it is logical, built into, inherent in the crime of burglary, that there may be a response to an uninvited entry into a home or — or other structure. By its nature, that transaction, that — those elements of burglary create the risk that force will have to be used. The same is true of kidnapping. And give me a contrast. And by contrast, what, that fell under the ACCA residual clause would not fall under 16b, because the same thing could not be said. Well, I — I mean, one that did not fall under the — the ACCA — No. Give me one that would fall under the ACCA residual clause, but — but — or where there was confusion as to whether it fell under the residual clause. Begay is — Begay is a good example there. It was precisely the — the crime involved in Leocal, where the Court had no trouble in a two-page decision saying that DUI is not covered because of this textual difference, because there has to be a — a risk of the use of force, which is not the accidental or sort of negligent conduct, whereas in Begay, the Court struggled with how to — how to deal with that under the residual clause. It — it created an extra-textual limitation, the purposeful, violent, aggressive test, in order to weed out negligent or accidental offenses, whereas the explicit text of — of 16b itself takes care of that problem. So that — that is an important difference. Another important difference, though, that I haven't mentioned yet, is that the residual clause tied the level of risk to the four enumerated offenses, which were not consistent with each other. Kennedy, I think you're — you're quite right that that was one of the arguments in Johnson that they said make the statute confusing. It — it does seem odd, before we look at Johnson, that giving examples makes the statute more vague. It's a little counterintuitive. But you're correct. I think that's the way that the Johnson court saw it. And I think the — I think the problem was not examples per se, but the fact that they were conflicting examples, that I think the Court came to conclude embedded an arbitrariness into the ACCA residual clause in all its applications. And that — and that's effectively what the — there was, like, an ingredient in that statute that made it incapable of consistent application. That's not true here.   Kagan. Kagan. Kagan. So, Mr. Kneeder, it's — it's absolutely right that the Court in Johnson said that those examples compounded the problem, but the essential problem that the Court thought existed was the use of the ordinary case analysis. So I'm just going to ask you the question that the Court asked in Johnson, and I — I — how do we answer this question? This is what the Court said in Johnson. How does one go about deciding what kind of conduct the ordinary case of a crime involves? A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct? So that's a multiple-choice test. What do we do? Because that is still the same under this statute. Well, it — I think it's not the same. Again, unlike — unlike in the ACCA residual clause, you start out by looking at the elements of the offense. And are the elements of the offense such that, by their nature, they give rise to a substantial risk of injury? Now, for some offenses, I think that you can look at the long history of the offense. And burglary is an example. And, indeed, in Leocal, this Court said that burglary is a classic example of a crime of violence, and that, in fact, the Senate report on this provision says that burglary is the classic example. And if one looks at Lefebvre or other historical materials, it is because of the risk of force that might be used. Of course, this statute also concerned risk to property. So certain offenses, I think the — Kagan. So can I give you another example just to test how this test works? You say you look to the elements of the offense to see if they give rise to a risk of injury. Do I have that right? Yes. Okay. How do we do vehicular flight under that example? I'm just trying to sort of ground this. And you might be right. I'm not — you know, I'm just trying to figure out what the difference is if we look at it that way, because that doesn't sound so different from what we were trying to do in ACCA. In fact, it sounds kind of the same as, honestly. So give me vehicular flight. How does it work? So vehicular flight from a police officer after being ordered to stop is, again, if you think by its nature, what was the legislature envisioning when it enacted that? And I think, again, it's parallel to burglary. The conduct is such that in the course of committing the offense, in the course of the flight, not something that might be collateral or down the road, is the — So that would fall on the included side?  Well, it may depend on the elements of the particular State statute. One can't give an across-the-board answer to any one label for a type of offense without looking at the elements. But, for example, in vehicular flight or any statute, the State law might, for example, have gradations, which would show that the more aggravated version is one that the legislature had singled out because of the particular risk. So it's important to look at the State statute. And what was it driving at? What are the elements? What harms was it — And go back to possession of a shotgun, because I'm running over in my mind my memory of the Johnson oral argument, where basically the S.G.'s office made exactly this argument about possession of a shotgun, how the elements of that offense are understood to give rise to a significant level of risk. Well, I think the concern — one of the concerns mentioned in Johnson was what if the shotgun might be used way down the road remotely from any — remote in time from any moment in time when the person was arrested possessing the shotgun? There might not be any — Well, presumably, the person is possessing the shotgun when the person kills somebody. So it's temporally. I don't think that that argument works. No, it — the offense continues for the entire duration of possession, but we're not saying that that's enough. There has to be a substantial risk in the course of committing the offense. And as one of the — Well, I thought I remember the government arguing in Johnson that most people who are found with sawed-off shotguns are committing crimes. Why isn't that a substantial risk of force being used? Well, I think — If statistically — if statistically — and I don't remember the statistics now, but they were very clear then that a huge amount, number of the crimes of possession of a shotgun were led to criminal activity. Well, I think it — is the — is the use of force necessary for the crime of possession of a shotgun and — and possession itself? It's not necessary for the use of — for burglary. If you walk in and there's nobody there, you take what you find. No, but the — but the historical understanding of burglary is precisely that it will — that it will — So we're now going back to cop — to gut instinct. No, it's not gut instinct. I think anything but. I think a court looks at the — again, the elements of the offense, judicial interpretations of the statute, analysis of what the State legislature was driving at, State judicial decisions that might themselves describe what the risk is or the risk that was being addressed by the — by the offense. It's a legal — it's a legal question. A judge's experience, however, with something like burglary can be quite informative. Before your white light goes on, could you address your first argument that the vagueness standard is different here than in Johnson? Yes. I might say, Jordan v. DeGeorge, a case from some years ago, is a little more persuasive than I had thought for the Respondent, for the Respondent here. You could say it's dictum because they didn't really need to reach the issue based on their holding. Well, I mean, I think there are a number of things to be said about DeGeorge. You're right. The issue is not addressed. The Court applied what seemed to be the same standard, but it wasn't briefed. And so the question of how it would apply in that setting wasn't addressed. Also the Court often — if the Court has what might be referred to as a drive-by ruling, I would say it was drive-by. It was considered. But usually you want adversarial presentation by the parties. For example, one important — several important aspects of DeGeorge, it did not discuss this Court's earlier decision in the Mahler case, in which the Court indicated that there could be a looser standard of — or would be a looser standard of vagueness in immigration cases, specifically pointing out a critical difference, and that is that the ex post facto clause does not apply to immigration. Therefore, a person can be removed for conduct that was not a basis for removal before he engaged in that conduct, criminal or not. And therefore, the notice piece of the vagueness standard really doesn't fit well  Sotomayor, that observation was at a time before the draconian effects of removal and deportation came into effect. We now have lifetime bars, which were rarely, or in very limited circumstances, imposed previously. We have many more criminal sanctions with harsher sentences now. I think more than anything, we have often said that vagueness depends on the gravity of what is at stake. Today, what's at stake is a lot more than what was at stake decades ago. But what's at stake can't be viewed just from that perspective. What's at stake is the fact that the immigration laws are vital to the nation's national security and foreign relations and the safety and welfare of the country. And there's always the fail-safe that the Attorney General, in his or her discretion, can deny anyone the right to stay here. But if we're going to ask immigration judges to impose the consequences that they do today, don't we need something that's not arbitrary? Kneedler, Well, if I could address several pieces of that. While there are more criminal offenses now that give rise to removal, the same basic point obtains, which is that a person can be removed on a ground that was not a criminal offense or it was not a basis for removal at the time he engaged in that conduct,  that means that the alien has no constitutionally-based right to notice, and therefore, the notice piece of the Vagueness Doctrine has far less force in this context. Alito If the Court were to hold that 16b is unconstitutionally vague in criminal cases, what would the impact of the 16b in criminal cases involving the application of the categorical approach, what would the implications of that be? Kneedler, Well, as we cite in our brief, there are a number of places in Title 18 where the definition of crime of violence is used, either by express reference to 16b or by use of the same formulation, like in 924C, where the same formulation is used. Alito What would be some of the most important examples? Kneedler, Well, that would be one. The 16b is incorporated into offenses dealing with money laundering, Hobbs Act robbery, I believe, a number of other offenses. It's also used to determine whether a juvenile will be prosecuted. Roberts Doesn't that suggest that the argument that the civil standards apply rather than the criminal one loses some of its force for precisely that reason? Kneedler, No. I don't think so. For one thing, I think it's important to recall that 16b is just a definition. It is not a statement of a crime on its own. It is a definition or identifying a category of offenses that are then plugged in to some other statute, either a criminal offense or the immigration laws. In the immigration laws, for example, it's identifying a category of crimes that are a – that constitute a ground for removal, just like all of the other aggravated felony provisions do or the non-criminal ones do. Kennedy I thought that the point that Chief Justice is underscoring is that if we go – if we base this decision on the fact that this is civil, then you have to come back here for other cases under 16b. Kneedler, No. That is true, and for that reason, that the Court may well want to, in our view, sustain 16b by applying the criminal standard, because if it – if it is sustained under the criminal standard as we think it clearly should be, then a fortiorari it would be – it would be constitutional in the good area. Breyer What do you think of the idea suggested in Justice Alito's opinion that the word offense, like the word crime, both of those words are ambiguous? They can refer either to a category of behaviors that many people can engage in, or they can refer to this behavior that this defendant engaged in on this particular instance. So he said, as I read it, let's back up. Can't be done. Congress thought, both in this statute and in the other statute, it wouldn't be that tough to categorize all the State criminal laws by their degree of risk of violence. Can't be done. Too many State criminal laws used in too many different ways, too many different words. No statistics are kept. The Justice Department can't get them, so we're left guessing. So let's back up and look at what this person did on this occasion. What is your reaction to that? Kneedler Well, we have not argued that, because this Court's decision – Breyer I didn't expect you to argue it. I just wanted to know what your reaction is. Kneedler But this Court's decision in Leocal said the categorical approach applies. If this Court were to conclude that this could not be sustained under the criminal standard, that may be one option. It may be a particular option. Breyer We'd have to have it argued, but I think if you really did that. I just don't know if you've thought it through at the SG's office about the pros and cons. And in case – you needn't have done, but in case you have done, I'd appreciate your telling us what you all think, even if you're not stuck with it. I know that's unusual, but you're stuck with it. I'm just curious. Kneedler There obviously would be advantages in the sense that the statute would be preserved. There could be questions, though, about how it would be administered to determine what actually happened on the prior occasion. But one place where, you know, the Court might want to consider reserving, if that were an issue, would be 924C, where the crime of violence is contemporaneous with the possession of the firearm. And so you're not looking at a past offense. You're looking at the overall offense in which the weapon was possessed. Kagan Could I ask, just in thinking through your argument, it would help me to get a few examples. So could you give me three examples, let's say, if there are any, if there are that many, where we struggled under ACCA, but where the answer is clear under 16b, so that I understand what it – what kind of distinction you're drawing. Kneedler Right. I think DUI is the prime example. LAOCAL itself concluded that DUI was not covered in a unanimous opinion. It's only – the Court's only occasion to have to address this in 30 years because of the text of 16b, the act that requires the act of use of force. I think the sawed-off shotgun, which this Court in Torres said was not covered by 16b, and we believe that that's correct, again, because of the – you don't have to use force in order to possess the shotgun, even though injury could result under the ACCA clause, perhaps, and that's what was confusing under the ACCA clause. So I think those are two prime examples. But 16b – Kagan Anything else? Because this is really important for me, is trying to figure out what the differences are. Kneedler Yes. And in Begay, where the Court formulated the extra-textual test of – I forget the precise words, but violent, aggressive conduct, it pointed out that some such limitation was also necessary because of otherwise, like, pollution offenses or consumer product offenses might be covered. So the Court, again, was juggling with the way the ACCA residual clause operates in order to figure out how to exclude that. Well, there's no question that those crimes are clearly excluded under the ACCA clause. On the other hand, some other crimes besides burglary, like kidnapping or escape, I think if one pictures those offenses, they clearly present a risk that physical force will be used and give this statute a core of valid applications that it can't be held unconstitutional on its face. If I may – Ginsburg The immigration judge also found that these burglaries qualified as crimes of moral turpitude, another ground for removal. Does burglary qualify as a crime of moral turpitude? Kneedler I think in some circumstances it may. I think it may depend on the nature of the State offense. Again, it's not always possible. California burglary is not generic burglary, as this Court recognized in Des Camps. If I may reserve the balance of my time. Roberts Thank you, counsel. Mr. Rosenkranz. Rosenkranz Thank you, Mr. Chief Justice, and may it please the Court. As Justice Sotomayor points out, there were two critical factors this Court pointed to in Johnson that, quote, "'conspired' to make the ACCA residual clause unconstitutional. Everyone agrees that they are both present here. It's hypothesizing the ordinary instance, the ordinary case of a set of elements, and second, then from that hypothesis, estimating the degree of risk of some sort. And as Justice Ginsburg points out, the government, correctly back in Johnson, said that those two factors are in existence here in Section 16b, and that the residual clause here was, quote, "'equally susceptible to challenge.'" Kagan There was something that's the – that isn't here, Mr. Rosenkranz, and that is a long history of struggling and failing to come up with an interpretation. And I'm wondering why you think we don't have that same history, because I don't think that there's any question that we would not have said what we said in Johnson had Johnson been the first case. Johnson was the umpteenth case, and we had gone back and forth, and we had struggled, and we couldn't figure out. And here we don't seem to have any of that. It seems as though – and not only with respect to this Court, but with respect to lower courts – it seems that everybody's getting along just fine. And much as I can't quite understand what the difference is, there just does seem to be a difference in practice. Rosenkranz Well, Justice Kagan, let me – let me give two answers. The first is that this whole notion that the government is discussing about a different experience with ACCA than with Section 16b is revisionist history. Every single ACCA case that this Court decided was presented to this Court in simultaneous assert petitions in the 16b context. And this Court would then GVR the 16b cases, and the lower courts and this Court would then cross-reference ACCA case – ACCA residual clause cases into Section 16b, treating them equivalently. So this Court's experience with the ACCA residual clause is its experience with Section 16b. And the whole series of questions you asked, Justice Kagan, about, well, what about Sykes? How would this turn out here? What about Chambers? What about Johnson itself? Every single one of those cases is coming back here. We know that they're coming. Sykes is already – that is, the Sykes issue – is already presented as a circuit conflict right now in the lower courts. It is roiling the lower courts. There is a Fifth Circuit case where the majority and the dissent of Sykes are being played out in the Fifth Circuit right now. And the same will be true of all of those. And then, secondly, it is simply not true to say that everyone's getting along just fine in the lower courts. Between our brief and the National Immigration Project, we've identified ten circuit splits, some of them on exactly identical elements. And what is the problem with those cases? The courts on either side, it's not just that they're engaged in different elemental analysis. The courts on each side are fundamentally disagreeing about what the ordinary case of a particular crime is. It's just a question. Ginsburg, what is the argument that 16b is more precise? For one thing, it is limited to in the course of commission of the offense, and that the offender must be the one who uses the force, and in addition, it covers the default of the force against the victim's property. So it has a specificity that the ACCA residual clause lacked. Rosenkranz. Let me start with the within the course of, which took a lot of Mr. Needler's argument time. Two things or three things to say about it. First, courts have uniformly held that in the course of does not entail a temporal limitation, that it doesn't. Ginsburg. I think it wasn't the word during the commission of. Is it in the course of or during the commission of? Rosenkranz. In 16b. In 16b, the phrase that the government is speaking of is in the course of committing the offense. And so just to continue that first answer, courts have held that inchoate offenses of the sort that Justice Kagan was asking about or possession offenses do create the risk, and appropriately so, because or let's take another example that consumed a lot of time today, burglary. Justice Kagan's question about burglary, notably, that is why in Layakal, this court held that burglary did was sort of the classic example of a 16b violent crime. Burglary, as this Court said in Johnson, it's completed the moment you cross the threshold. If all we are looking at is the temporal, so when are the elements completed, entering with the bad intent is what completes the elements. So if someone enters, they've completed the elements, they can then ransack the appellate department for the next 5 hours. That is still in the course of committing the offense. Second answer, the government's new interpretation does not change the fundamentally imaginary nature of the inquiry, no matter what. Courts will still be imagining the ordinary case, only now you have to further imagine, okay, in that ordinary case, when are the elements typically satisfied? And finally, that textual difference is not actually a textual difference. ACCA says the ACCA residual clause says the same thing in different words. Kennedy, of course, courts and legislatures always have to imagine consequences when they are classifying crimes. They have to define what burglary is because they know that in a significant number of cases, certain consequences will have. That's the way the law works. Yes, of course, Your Honor. And if this were just to the question that Justice Alito asked Mr. Kneedler about ramifications, if this were just about importing 16b into the definitions of various crimes, there's no vagueness problem, because as this Court said in Johnson, and it addressed exactly that question in Johnson, it's a totally different inquiry when you are applying the stated elements to an actual concrete example that is there before the Court. Alito, Mr. Rosenkranz, could I ask you this? Suppose Congress enacted a statute that said any person who commits a crime of moral turpitude in the District of Columbia or within the special or maritime or territorial jurisdiction of the United States shall be imprisoned for not more than 20 years. Would that be unconstitutionally vague? Rosenkranz, Your Honor, it would certainly be problematic. And the reason it would be problematic is because you don't have an administrative agency that then gives content to the moral turpitude language the way you do, for example, in the immigration context, and by the way, an agency to which deference is owed. But this is a statute, 16b, that is a criminal statute. Alito, Mr. Rosenkranz, but that seems to me, I mean, that I'm surprised by, somewhat surprised by your answer, that seems to me to be at least as vague as 16b. And yet the whole thing in the Jordan case on which you rely was that that a deportation statute that permitted deportation for a person convicted of a crime of moral turpitude satisfied the applicable vagueness standard there. So the question is, is that a moral turpitude? Rosenkranz, Your Honor, I think that's a moral turpitude. Yes, Justice Alito, and that's exactly the distinction. So today, moral turpitude is a phrase that the executive agency has defined. People know what it means. They know what's in and they know what's out. But, I mean, unless you're willing to say that the criminal statute that I hypothesized would satisfy vagueness standards, I don't see how you can say that the same vagueness standard applies in criminal cases and deportation cases. Your Honor, the same vagueness standard does apply in the two contexts, but one. So then the crime, then the statute making a crime of moral – saying anyone who commits a crime of moral turpitude sentenced to 20, up to 20 years, that would be – that would satisfy vagueness for a criminal statute. Rosenkranz, In a criminal statute, it would not because there is no history of agency interpretations to which courts must defer. But let me just back up for a moment. Alito, is DUI a crime of moral turpitude? Rosenkranz, I have no idea. Alito, How about failure to file an income tax return? Rosenkranz, I mean, I don't know what the agency interpretations of moral turpitude are. Alito, How about unlawful entry into the United States? Rosenkranz, I think not. But let me just back up, because Your Honor has moved into the second issue. I just want to be clear that in our view and in the view of all of the lower courts, Jordan settles the question on whether it's the same standard for criminal and deportation. But this Court does not have to embrace Jordan or even address the question whether it's the same standard. 16b is a criminal statute that Congress chose to import wholesale into the immigration laws and that has criminal applications even under the INA. Roberts, Johnson talked a lot about the confusion caused by the predicate offenses that were listed. In fact, in colorful terms, explained why those compounded the vagueness in the residual clause. Of course, you don't have those here. Rosenkranz, Yes, Your Honor. So I would start with where Justice Kennedy started, which is as a general matter, one does not ordinarily think that giving examples makes something more vague than it would otherwise be. And I know this Court spent a lot of time trying to draw lessons from those examples with varying, actually with no success, in varying methodologies to try to narrow what is otherwise a vague statute. And the government's argument in Johnson was that Congress succeeded in narrowing with those enumerated elements, those enumerated crimes, and this Court concluded that it didn't. But a statute that has examples, even if they are confusing examples, has to be better than a statute that has no examples. Roberts, Well, the statute as a whole might be, because you can look at it and say, well, there's one of the examples. But it seems to me that argument doesn't respond to the point that it makes the residual clause much more confusing if the examples seem to be pointing in different directions and involve different, totally different consequences. Rosenkranz, Yes. Roberts, So that's basically what the Court held in Johnson. So the fact that, yes, it's clear when you get to the specific thing that's named, but that, as the Court explained, it makes it much more confusing, confusing when you get to the residual clause. Rosenkranz, So I think the easiest way to look at this, I would say, is if that had been the pivotal factor in Johnson. So Johnson says there are two factors that conspired. If it had been, indeed, that other factor, what this Court should have done in Johnson is to say we will now, as a matter of statutory construction, stop trying to draw lessons from those examples and interpret the residual clause in its own right without trying to figure out whether the examples teach something about the relationships. This Court had an obligation to save the statute if that's what was causing the problem. It didn't, and I think it was this Court was very conscious of what it was doing when it said that there were two critical things that conspired, two critical elements that conspired to make the statute vague. And then in Welch, when this Court repeated what its holding was and its rationale was in Johnson, it repeated those same two critical elements, not this third one about the enumerated classes. Breyer, I see that. The thing underlying this is, which is a difficult case, if we say you're right, what then do we say about the moral turpitude, unfair competition, just and reasonable rates, public convenience and necessity, and there are a hundred others, and they're all civil. Now, what you've suggested is, well, what you say is this. You say that the Constitution requires the creation of an administrative agency which will develop a tradition over time that will clarify what will otherwise do. That kind of reasoning was present in the non-delegation doctrine. So what you want to say is that which would have saved a statute under the non-delegation doctrine, which is not fair competition, delegation run riot, but which is gives meaning, is also necessary to save a civil statute from vagueness. Hmm. That's a very interesting holding. I'd rather read it in a lower review article than I would write those words which will suddenly become real. So I'm not, I'm not, do you see where I'm floating on this? I see your point, it's quite similar, but I quite worry about the implications. Well, Your Honor, so let's talk about the immigrations in, excuse me, the implications, that is, in the immigration context to begin with. In the immigration context, to the extent that, Your Honor, that you were quoting Justice Breyer from, I was quoting Cardozo. Right, well, okay. I'm happy to be confused with that. I confuse you all the time with him. So to the extent that we're focusing on language that appears in the immigration statutes, that language has been interpreted, and that is a key distinction between this case and Mahler, for example, with which Mr. Needler invoked. Mahler was a situation in which Congress had to find the crimes that would make you deportable, and the problem was that the Attorney General could then exercise discretion as to whether he would deport you or not. And it was couched in terms of delegation because it was pre-Chevron and pre-Schecter poultry, but this Court said, no, the fact that there is discretion doesn't bother us. Now, the second answer is, in the immigration context, as distinguished from perhaps any other context, as Justice Sotomayor was saying, the immigration context in particular is a context that implicates liberty with the severest sorts of consequences. So at a minimum in the immigration context, completely apart from the public good sorts of questions and applications of civil scrutiny. Kagan.    Kagan. Kagan. Kagan. I guess I would have thought that your answer would have been different. I guess I would have thought that your answer would have been, whatever implications Johnson had for vagueness doctrine, it has already had, and that all you're asking us to do is just essentially to say that this statute is no different from the statute that we looked at in Johnson, and to write an opinion that basically just repeats Johnson, and whatever implications it's had, or it will have, it will have regardless, and this opinion would do nothing more. Thank you, Your Honor, yes, what she said. But it was the same. I mean, if that's your answer, it totally ignores the fact that this is not a criminal case. And it certainly is true that deportation has more severe consequences than the typical civil case. But there are many other civil cases that can have a devastating impact on someone, such as child custody, loss of a professional license, complete destruction of a business, loss of a home. Now, assuming that there is some sort of vagueness standard that applies in civil cases, I would have thought your answer would be that it's a sliding scale and that the standard for civil cases is not the same as the standard for criminal cases, but how much specificity is required in the civil context depends on the severity of the consequences of the case. Well, so, Justice Alito, this Court in Hoffman said that it's a sliding scale. But in Jordan, when it came to deportation, which this Court has described as the gravest sort of consequence, which directly implicates liberty interests, this Court said it's at the same level as criminal. Well, that's not exactly the way the Court, what the Court said, or at least it's not necessary to read Jordan that way. And I think Jordan can be read to say, look, the dissent has raised this new argument. It wasn't briefed. It wasn't argued. The dissent says this is unconstitutionally vague. We're going to apply the criminal standard here, and it satisfies the criminal standard. It didn't say assuming for the sake of argument, but I think it can certainly be read that way. And if you don't read it that way, you are stuck with the conclusion that a statute making a crime of moral turpitude punishable by a felony term of imprisonment would satisfy the vagueness standard for a criminal statute, which I think is very difficult to defend. Well, so, Your Honor, let me say again two things. The first is, this Court doesn't have to decide whether Jordan equated criminal cases and civil cases with the most severe consequences, because this is a criminal statute that this Court is interpreting, and it has criminal consequences even as imported through the INA. And I just want to say the same thing if it didn't, if this statute did not incorporate a definition that is also used in criminal statutes and simply had the same standard in a purely immigration statute, no reference to a definition that also applies in criminal cases. I would have a different argument, but let me just be clear. This Court has said, and it said it in A.B. Small, it took a statute that was held unconstitutional, and this is back in 1924, 25, found as a statute that this Court found unconstitutional in the criminal context. It was then applied. It was a silly breach of contract case applied as a defense, and this Court said, no, when we struck it over there, we're going to strike the civil ramifications here as well. And this Court could adopt a very narrow holding, saying that when what Congress has done is to make the decision to import a criminal statute into a civil context, it brings the soil with the roots. And there's no such thing. It's actually incoherent. Alito, I mean, I don't think that makes the slightest bit of sense. Suppose there were a criminal statute that says that it is a felony to charge an unjust rate, and then there was a civil statute that incorporated that, and we would say, well, because you can't make it a felony to charge an unjust rate or price, you can't have that in the civil statute. You can't incorporate it into the civil statute. Your Honor, you just recited the facts of AB Small. That was exactly the statute there. It was struck in the criminal context. It was then imported as a defense in the civil context, and this Court said in AB Small, we don't care whether it was civil or criminal. If it was struck there, we're going to strike it here. And there's an important kind of separation of powers reason to do this. Congress made the decision to equate the two. Congress didn't do that. Congress could have used different words and revised the statute. But think of it in the RICO context. Let's take a classic case that this Court has decided. The definition of gangster this Court held in Lanzetta is unconstitutionally vague. A court couldn't then, in a civil RICO case, adopt that same standard, say that is the predicate crime, and impose trouble damages. It would be incoherent to tell the lower courts that what you do is take a statute that would be unconstitutional there and import it into the civil context and uphold it as constitutional here. Let me give you a very practical reason on the facts of this case. So in this case, Mr. DiMaia gets deported on the ground that the statute is sufficiently clear, and he is an aggravated felon. He then comes back to the United States the next day and can be prosecuted and will be prosecuted as an aggravated felon. But as an aggravated felon, there would be a different standard and he can't be prosecuted. It would make no sense to have a scheme where the same words that use the same statutory definition are mean something in one context, as this Court would hold hypothetically in this case, but in the 16b context, or in the context of the definition of a crime, means something else. Ginsburg. What do you do with Leocow? I mean, one thing is clear. The Court did say that burglary is the classic crime that fits within 16b. Well, two things to say about that statement in Leocow, which was obviously the court, Leocow was not, burglary was not before this Court. The first is, this is California burglary, which looks very different, as this Court held in DeKalb, from a normal burglary. California burglary can be committed by being invited into someone's home with the intention of selling them fraudulent securities. That is an actual case that applied it in that way. That's why this case didn't work under 16a in the elements, right? That's correct, Your Honor. And then you bring me to another point that's really important. Mr. Kneedler never answered Justice Kagan's question about under the government's current view of what 16b means, where the space is between the elements clause and the residual clause. I'm actually having trouble coming up with an example of a situation, of a scenario in which a crime does not satisfy the elements clause because there is no element that requires the use or threat or attempt to use force, but on the other hand, quote, unquote, by its nature, requires the use of force the moment you finish satisfying each element. Sotomayor, I think he says burglary is that. Burglary can't be that. A burglary is committed the moment you cross the threshold. And by the way, in California, it doesn't have to be an unlicensed crossing of the threshold. So a burglary is committed when you cross the threshold, even if you're crossing the threshold lawfully. Kagan. Kagan. If I understood what he was saying, and I won't try to put words in his mouth, but it was something along the lines of, yes, it's true that the elements of burglary do not have the use of force, but if we look back to the historic understanding of burglary, what we find is a longstanding concern with exactly that subject. In other words, that burglary wouldn't have been defined as it was, wouldn't have been prosecuted as it was, except for this fear of the use of force. I don't know. That's the best I can do with it, and he'll tell me if he can do better. So, Your Honor, I can't do any better. That sounds like the ordinary case approach, which creates the mischief when you layer on top of it an assessment of risk. What is the principle of law that led to AB Small? I mean, no one thinks of statutory words in the civil context, unjust or unreasonable rights, whether enforced by courts against railroads or whether enforced by an agency, is unconstitutional. No one thinks that. AB Small holds that, but it holds that in the context of there having been earlier cases that struck those words down in the criminal context. So what is the principle of law it stands for? The principle of law that I was arguing specifically is the principle of law that when a court strikes a statute that Congress has made the decision to impose criminal and civil consequences to, that statute is gone and you don't start preserving the civil consequences to it, because Congress made the decision and we just follow Congress's direction. I do want to close with one last point, which is about the practical consequences of this ruling. First, I already said, in the criminal context, the practical consequences are very limited, because as this Court observed in Johnson, practically all of the applications of 16b are applied to a concrete set of facts. Then the question becomes what, in light of the notion that this Court has made that this Court has not decided a lot of 16b cases, should this Court try to engage in the same exercise in the 16b context that was a failure in the Akaton context? But in deciding whether to take that route, this Court has to decide what is to be gained by that enterprise. The enterprise of setting the lower courts adrift, of considering the risks of the use of force from statutes that do not have use of force as an element. At some point, this Court is going to have to decide whether it's had enough. And it's not like we don't know where this case is headed, where this inquiry is headed. Justice Kagan unveiled all of the next sets of questions. They are all coming here. We have seen this show before. We know how it ends. So the Court may as well save itself and the lower courts the grief of trying  Kagan Well, what's coming here? You said that the lower courts are all confused and there are splits developing. What? Sykes-Redux is headed to this Court. After Sykes will be a James-Redux, a Chambers-Redux. If you look at our brief with the list of examples of circuit conflicts, they're all coming here. The National Immigration Projects Brief cites another five circuit conflicts. They are all coming to this Court, and this Court will be overwhelmed with the exercise of trying to figure out what the ordinary case of each of those thousands of statutes is, just as it was overwhelmed and finally gave up the exercise in Johnson. So we know that it's coming. We know where it's going to end. So this Court should just end it here and it should end it now. Thank you, Your Honors. Roberts Thank you, counsel. Mr. Kneedler, three minutes. Kneedler, thank you, Mr. Chief Justice. First, we explain in our opening brief and reply brief that there is simply not the disarray that there was with respect to the ACCA residual clause. This Court has considered one case in the 30 years. Sotomayor, that's if you concentrate on us, but I did read those portions of Respondent's brief and the Amici brief, and it does seem like we're going to have a redux Sykes and a redux James and a redux many of the issues. Kneedler, as we explain in our brief, the conflicts that we address there can be explained by the differences in the State statutes, and that's what you have to apply, the statutory standard of creating a risk to particular State statutes. And as we explain, the conflicts that they assert are largely that. But if I could then go on. Leocal is the only case this Court considered, and the Court there considered it clear that it was able to say that DUI was in and burglary was in, DUI was out. And that's because of the sort of textual differences between this statute and that one. It requires not some injury down the road, but physical force actually being used or risk of physical force actually being used by the defendant in the offense. Sotomayor, there were some who argued in the drunken driving test that the minute you get behind the car, you add drunk, you're using a lethal weapon, a car, to inflict injury on others. Kneedler, but the Court the Court didn't win here, but that argument was still being made in the courts below, and some courts below bought it. Kneedler, But the important point is this Court clarified it in Leocal to say that it's a category of active violent crimes, risk of physical force or actual physical force under 16a. And again, burglary, this Court said, and burglary is a continuing offense. While you might be able to prosecute somebody for burglary the moment they enter, burglary, this generic burglary, as this Court said in Taylor, includes remaining in the house. And this Court said, it's not made up, this Court said burglary is included because by its nature it involves a substantial risk that the burglar will use force against the victim in completing the crime. The same thing is true with kidnapping. You can kidnap somebody by inveigling, but the risk of force is that he'll try to escape and you'll have to use physical force. So I don't think the Court is at sea. It can look at what the State statute is driving at and apply the standard. Many, also many statutes have civil and criminal applications, but that doesn't mean private litigants can invoke the criminal law standard. AB Small, when the Court got to the civil context, it said there was no intelligible standard, which was a much more relaxed standard. Finally, on immigration, immigration is vested in an administrative agency. So there is always the intervening action by the executive. And even in the situation where the agency may not get deference, there is still a centralized control over the bringing of the cases. And the Board of Immigration Appeals can say this is out, this is in. The courts will only see the cases where the BIA actually sustains the removal, but that has a way of limiting and giving notice to people. With respect to the other case, I'm sorry. Submitted.